MARK M. VANDEYACHT AND PATRICIA D. VANDEYACHT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Vandeyacht v. Commissioner
Docket No. 26330-90
United States Tax Court
T.C. Memo 1994-148; 1994 Tax Ct. Memo LEXIS 149; 67 T.C.M. (CCH) 2606; April 11, 1994, Filed *149 Decision will be entered under Rule 155. During the years at issue, Ps purchased two furnished residences in Sarasota, Florida, for future appreciation in value. Ps already owned and resided in another residence in Sarasota and did not occupy or use these residences for personal purposes. To help pay the real estate taxes and other expenses on these residences, Ps occasionally rented them, at fair market value rents, to their children or friends. However, Ps did not rent the residences or advertise their availability for rent to the general public. 1. Held: Ps are entitled to deduct otherwise allowable expenses attributable to their holding of the properties, but not rental expenses in excess of rental income. For purposes of sec. 183, I.R.C., Ps engaged in two separate activities in holding and renting the residences; although Ps held the residences for profit, they did not rent them for profit. 2. Held, further, Ps are not liable for sec. 6653(a), I.R.C., additions to tax for negligence or intentional disregard of rules and regulations. 3. Held, further, Ps are liable for sec. 6661, I.R.C., additions to tax for substantial understatement of income tax for *150 the years 1984 and 1986. For petitioners: Philip A. Munroe and William L. Stroik
For respondent: J. Paul Knap and Edward G. Langer BEGHE
BEGHE
MEMORANDUM FINDINGS OF FACT AND OPINION BEGHE, Judge: Respondent determined the following deficiencies in and additions to petitioners' Federal income tax: Additions to Tax
Year
Deficiency
[1] Sec. 6653(a)(1) Sec. 6653(a)(2) Sec. 6661 1984
$ 32,990
$ 7,221
[2]
$ 36,104
1985
169
265
[3]
--
1986
21,720
3,316
[4]
16,578
The additions to tax shown in the statutory notice of deficiency include additions related to adjustments by respondent and resulting tax liabilities that petitioners agreed to prior to the mailing of the deficiency notice. Petitioners, in addition to agreeing to those adjustments, *151 have not disputed, in their pleadings, at trial, or on brief, respondent's determination that various expenses reported on the J-Mark Construction (J-Mark) Schedules C to their 1984-86 income tax returns were for recovery property and should have been capitalized. Thus, petitioners are deemed to have conceded this issue. Goldstein v. Commissioner, 89 T.C. 535 n.2 (1987). The remaining issues we must decide are: (1) Whether section 183[1] precludes petitioners from deducting otherwise allowable expenses attributable to their holding and occasional renting of two Sarasota, Florida, residences; (2) whether petitioners are liable under section 6653(a) for additions to tax for negligence or intentional disregard of rules and regulations for the years at issue; and (3) whether petitioners are liable under section 6661(a) for additions to tax for substantial understatement of income tax for 1984 and 1986. *152 For the reasons that follow, we hold that petitioners are entitled to deduct otherwise allowable expenses attributable to their holding of the two residences, but not expenses in excess of rental income that were attributable to their renting of these residences. We also hold that petitioners are not liable for additions to tax for negligence or intentional disregard of rules and regulations, but that they are liable for additions to tax for substantial understatement of income tax. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein. Petitioners resided in Sarasota, Florida, when they filed their petition in this case. During the years at issue, Mark M. Vandeyacht (petitioner) built and operated warehouses in several States, and Patricia D. Vandeyacht was a homemaker. Petitioners divided their time between residences in Wisconsin and Florida during the years at issue. Petitioners owned their Florida residence and rented their Wisconsin residence. Petitioner has an eighth grade education and no formal training in business, accounting, or taxation. Petitioners' Investment Properties
In early *153 1984, petitioners were looking to purchase investment property in the area of Sarasota, Florida. Petitioner became aware of a Sarasota condominium development, the Gulf and Bay Club, that was selling soon-to-be-built waterfront condominiums at a preconstruction price of $ 215,000 per unit. At this time, the Gulf and Bay Club was selling recently constructed condominiums at $ 245,000 per unit. Petitioner asked a friend, Robert Talkington, of Cascade Realty in Sarasota, for his opinion of the Gulf and Bay Club offerings. After Mr. Talkington told petitioner that there was a good likelihood that these condominiums would substantially increase in value within a few months, petitioner spoke to some of the current owners of Gulf and Bay Club condominiums about the appreciation outlook for their condominiums. Petitioner also looked around the Gulf and Bay Club and reviewed price listings of condominiums in the Gulf and Bay Club that individual owners were selling. On July 1, 1984, petitioners purchased a furnished waterfront condominium in the Gulf and Bay Club. Petitioners owned and resided in a house in Sarasota when they purchased the Gulf and Bay Club condominium. Petitioners *154 never occupied the Gulf and Bay Club condominium or used it for personal purposes, and their sole purpose for purchasing the condominium was to hold it for its expected increase in value. Petitioners paid $ 225,985 for their Gulf and Bay Club condominium, of which $ 16,824 was for the furnishings. The purchase price reflected a $ 20,000 preconstruction discount. In early 1985, Mr. Talkington told petitioner he had some clients who were getting divorced and were anxious to sell their single-family house in Sarasota. Because Mr. Talkington had an obvious interest in selling the house, petitioner discussed this investment with his accountant, Frank Simonis of the certified public accounting firm of DiRenzo, Simonis, and Miller (DSM). Mr. Simonis owned investment property near Sarasota, and he told petitioner that the house was a good investment considering the then-prevailing rate of appreciation, between 10 and 20 percent annually, of Sarasota waterfront property. On June 1, 1985, petitioners purchased the furnished house at 624 Waterside Way in Sarasota. Petitioners paid $ 279,573 for this house, of which $ 32,112 was for the furnishings. When petitioners purchased the house *155 on Waterside Way, they continued to own and reside in their other house in Sarasota. Petitioners never occupied the Waterside Way house or used it for personal purposes, and their sole purpose for purchasing this house was to hold it for its expected increase in value. Petitioners employed a caretaker to maintain the Waterside Way house and grounds. The Gulf and Bay Club condominium was maintained by the condominium association. During the years at issue, neither property was significantly damaged or required major repair. Petitioners sometimes rented the Gulf and Bay Club condominium and the Waterside Way house to their children and friends. Neither property was rented more than 12 weeks per year, and petitioners' children, in the aggregate, never rented either property for more than 14 days in any single year. Petitioners never allowed anyone to stay in either property without paying rent. Sometimes, if petitioners were staying in their Sarasota house when the properties were rented, they would visit and go out with their children or friends who were renting the properties. Petitioners did not rent or attempt to rent the Gulf and Bay Club condominium or the Waterside Way *156 house to the general public. Although petitioners were renting these properties to help pay the real estate taxes and other expenses associated with holding the properties, they thought that value-impairing damage would be less likely if they restricted rentals to their children and friends. From July 1984 through December 1986, petitioners' children and friends paid petitioners $ 700 per week to stay in the Gulf and Bay Club condominium. Petitioners' children and friends paid petitioners $ 700 per week in 1985 and $ 800 per week in 1986 to stay in the Waterside Way house. These rent payments were in line with the fair rental values of the properties. Mrs. Vandeyacht made a record of who stayed in each residence, but commingled the rent payments with funds in her personal checking account. During the years at issue, petitioners received and reported the following rental income: Property
1984
1985
1986
Gulf and Bay Club Condominium
$ 2,100
$ 8,400 $ 6,500 Waterside Way House
--- 2,800
6,000
2,100
11,200
12,500
Petitioners also paid or incurred the following expenses: Gulf and Bay Club Condominium
Expense
1984
1985
1986
Depreciation
$ 7,957
$ 15,915
$ 17,328
Insurance
--- 84
186
Mortgage interest
8,710
22,038
20,804
Loan amortization fee
707
1,413
--- Utilities
691
1,444
--- Maintenance & repairs
477
2,245
3,038
18,542
43,139
41,356
*157 Waterside Way House
Expense
1985
1986
Depreciation
$ 9,591
$ 16,669
Insurance
198
212
Mortgage interest
10,611
16,458
Loan amortization fee
68
1,530
Utilities
2,198
--- Trash pickup
376
--- Taxes
69
--- Maintenance & repairs
644
3,813
23,755
38,682
In 1988, petitioner's businesses were in financial trouble, and he faced the possibility of bankruptcy. In summer 1988, petitioners, in an attempt to keep the Gulf and Bay Club condominium away from petitioner's creditors, "sold" the Gulf and Bay Club condominium to their children for the face amount of the mortgage. On July 29, 1988, petitioners sold the Waterside Way house, not including the furnishings, to an unrelated third party for $ 250,000. [2] Petitioners used the proceeds of this sale and the proceeds of the sale of their personal residence to purchase a more expensive personal residence that they believed would be free from creditors' claims under 11 U.S.C. section 522(b)(1988) and article 10, section 4 of the Florida Constitution if petitioner had to declare bankruptcy. *158 Petitioners reported, on their 1984, 1985, and 1986 income tax returns, respectively, losses of $ 16,422, $ 55,694, and $ 67,538 on their investments in the Gulf and Bay Club condominium and the Waterside Way house. Petitioner's Construction and Warehouse Operations
During the years at issue, petitioner owned and operated several sole proprietorships, including J-Mark and DSI Leasing. Petitioner also was a shareholder, director, and employee of Distribution Specialists, Inc. (Distribution Specialists), a warehouse operating corporation, and a limited partner in several limited partnerships that purchased warehouses built by J-Mark. J-Mark built warehouses that it sold to various limited partnerships, of which Century Capital Group (Century Capital) was the general partner. [3] The Century Capital limited partnerships would then lease the warehouses to Distribution Specialists, which operated them. Distribution Specialists leased its operating equipment from DSI Leasing. *159 Petitioners' 1984-86 Income Tax Returns
During the years at issue, petitioners employed DSM to prepare their individual income tax returns. Petitioners, through a bookkeeper, provided DSM with the necessary information to prepare their income tax returns, including receipts and disbursements spreadsheets for each of petitioner's businesses. DSM would review petitioners' records and contact petitioner or his bookkeeper if they had any concern that an item was incorrectly recorded on the spreadsheets. The Schedule C for J-Mark included in petitioners' 1984 income tax return shows that petitioner, in doing business as J-Mark, had gross income of $ 3,702,050 and construction costs of $ 3,517,520. The Schedule C for J-Mark, however, does not reflect $ 217,266 of income that petitioner received from the 1984 sale of a Racine, Wisconsin, warehouse that J-Mark had constructed. Petitioner, in contrast to his usual practice of selling the J-Mark constructed warehouse and all adjoining real property that he owned, sold the warehouse and only 14 of his adjoining 50 acres. Petitioner's bookkeeper, however, did not allocate the property's cost basis between the warehouse and property *160 sold and the 36 acres that petitioner retained. Because the cost basis recorded by the bookkeeper was in line with the cost basis of other properties sold by petitioner, DSM did not discover the basis allocation error when it prepared petitioners' 1984 income tax return. In 1984, petitioner's bookkeeper also mistakenly recorded a $ 66,053 purchase of assets by DSI Leasing as a construction cost of J-Mark. DSM did not discover this mistake when it reviewed petitioners' records in preparing their 1984 income tax return. Thus, the construction costs shown on the Schedule C for J-Mark incorrectly reflect this $ 66,053 purchase. Petitioners further reported, on their 1984 income tax return, interest income of $ 59,502 from 13 sources, including $ 408 received from Southeast Bank. During 1984, petitioners received additional interest from Southeast Bank in the amount of $ 1,435. While petitioners received a Form 1099 from Southeast Bank showing that the Bank paid them interest of $ 408, they did not receive a Form 1099 from Southeast Bank for the $ 1,435 of additional interest received. In 1985, J-Mark made a $ 10,000 capital contribution to Warehouse Partners or Warehouseman, Inc. *161 The J-Mark Schedule C included in petitioners' 1985 income tax return erroneously reported the $ 10,000 contribution as a business expense deduction. The same Schedule C also erroneously reported $ 8,447 of personal travel expenses as expenses incurred by petitioner doing business as J-Mark. Petitioners further reported, on their 1985 income tax return, interest income of $ 50,648 from 14 sources, including $ 1,048 received from Valley Bank. During 1985, petitioners received additional interest from Valley Bank in the amount of $ 4,589. While petitioners received a Form 1099 from Valley Bank showing that the Bank paid them interest of $ 1,048, they did not receive a Form 1099 from Valley Bank for the $ 4,589 of additional interest received. In 1986, J-Mark lent $ 200,000 to the Century Capital Group. However, petitioner's bookkeeper recorded the $ 200,000 loan as a J-Mark expense of a warehouse project it was completing in Dallas, Texas. When DSM inquired about the $ 200,000 during their review of petitioner's 1986 books and records, petitioner's bookkeeper confirmed that the $ 200,000 was an expense resulting from the Dallas warehouse project, and DSM was satisfied with this *162 response. Petitioners also reported, on their 1986 income tax return, $ 22,447 of expenses incurred by J-Mark with respect to a warehouse project in Baltimore, Maryland. The warehouse was not completed until 1987. Because J-Mark reported income and expenses using a completed contract method of accounting, the $ 22,447 was properly deductible in 1987, not 1986. Petitioners became aware of the above-mentioned mistakes while respondent was auditing their 1984-86 income tax returns. When petitioners discovered a mistake, as was the case with petitioner's failure to allocate the cost basis between the Racine warehouse land and the adjoining property, they brought the error to the attention of respondent's auditor so that an appropriate adjustment could be made. OPINION Issue 1. Deductibility of Expenses
The general rule is that a taxpayer may deduct all ordinary and necessary expenses paid or incurred (1) in carrying on any trade or business, (2) for the production of income, or (3) for the management, maintenance, or conservation of property held for the production of income. [4] Secs. 162(a), 212(1) and (2). However, exceptions to this general rule limit the deductions *163 allowed for expenses incurred in connection with the rental of a house also used as a personal residence, sec. 280A(c)(5), and with respect to an activity not engaged in for profit, sec. 183(a).
Inasmuch as the conditions for the application of section 280A(c)(5) to petitioners' rental activities have not been satisfied, [5] we turn to the question raised by the statutory notice of deficiency, whether section 183 precludes petitioners from deducting otherwise allowable expenses attributable to the Gulf and Bay Club condominium and the Waterside Way house. Section 183(b) *164 provides that a taxpayer not engaged in an activity for profit may deduct only (i) those expenses incurred in connection with that activity that are deductible without regard to whether the taxpayer engaged in the activity for profit and (ii) those expenses allowable if the activity had been engaged in for profit, but only to the extent that gross income from the activity exceeds deductions otherwise allowable. *165 Section 183 applies to deductions attributable to "an activity." The taxpayer therefore may not aggregate income and expenses from separate activities in determining whether he engaged in a particular activity for profit. Sec. 1.183-1(d), Income Tax Regs.; see also Scheidt v. Commissioner, T.C. Memo. 1992-9, and cases cited therein. Thus, the deductibility of certain expenses may depend on whether the taxpayer engaged in one or more than one activity. Sec. 1.183-1(d), Income Tax Regs.[6] See generally Boddy v. Commissioner, T.C. Memo. 1984-156, affd. without published opinion 756 F.2d 884 (11th Cir. 1985); Fields v. Commissioner, T.C. Memo. 1981-550. *166 a. Did Petitioners Engage in More Than One Activity?
Respondent argues that petitioners, in holding the Gulf and Bay Club condominium and the Waterside Way house for their expected increase in value and in renting these properties, engaged in two separate activities for purposes of section 183. Respondent argues, citing section 1.183-1(d)(1), Income Tax Regs., that these undertakings were separate activities because petitioners' rental endeavors did not reduce their net cost of holding the properties. Respondent, in support of the two activity argument, contends that the following expenses are attributable solely to petitioners' rental of the properties: [7]
Gulf and Bay Club Condominium
Expense
1984
1985
1986
Depreciation of furnishings
$ 1,682
$ 3,364
$ 3,364
Utilities
691
1,444
-- Maintenance & repairs
477
2,245
3,038
2,850
7,053
6,402
Waterside Way House
Expense
1985
1986
Depreciation of furnishings
$ 3,211
$ 6,422
Utilities
2,198
-- Trash pickup
376
-- Maintenance & repairs
644
3,813
6,429
10,235
*167 Petitioners, on the other hand, contend that their holding of the Gulf and Bay Club condominium and the Waterside Way house and occasional renting of these properties is one activity. Petitioners argue that depreciation is an expense attributable to holding the properties and that respondent is mistaken in differentiating between depreciation of the furnishings and depreciation of the residential structures. [8] Petitioners therefore argue that their rental of the properties was one activity under section 1.183-1(d), Income Tax Regs., that did reduce their net cost of holding the properties. Respondent's determination is presumptively correct, and petitioners bear the *168 burden of proving it erroneous. Rule 142(a). The taxpayer, for purposes of section 183, generally has discretion when characterizing several undertakings as one or more activities. Sec. 1.183-1(d), Income Tax Regs. However, where the taxpayer purchases or holds real property with the primary intent to profit from its expected increase in value, the holding of such property and a second undertaking with respect to such property will be one activity only if the second undertaking reduces the net cost of carrying the property for its expected increase in value. [9]Id.; Estate of Power v. Commissioner, 736 F.2d 826, 829 (1st Cir. 1984), affg. T.C. Memo. 1983-552; Stubblefield v. Commissioner, T.C. Memo. 1988-480; Mayes v. United States, 60 AFTR 2d 87-5046, 87-2 USTC par. 9478 (W.D. Mo. 1986). Thus, for purposes of section 183, the holding of property and a second undertaking will not be one activity unless the income derived from the second undertaking exceeds deductions not directly attributable to the holding of the property. [10] Cf. sec. 1.183-1(d), *169 Income Tax Regs.
Petitioners incorrectly argue that depreciation is an expense attributable per se to the holding of real property for its expected increase in value. Although section 1.183-1(d), *170 Income Tax Regs., provides that "depreciation of improvements to the land" is an expense directly attributable to the holding of real property for its expected increase in value, it does not provide that depreciation of assets that are not improvements to the land is an expense attributable to the holding of real property for its expected increase in value. Thus, depreciation is not an expense attributable to the holding of real property for its expected increase in value if the asset is not an improvement to the land. Petitioners purchased the properties furnished. However, furnishings are not inherently permanent structures that are considered improvements to real property, cf. sec. 1.48-1(c), (e), Income Tax Regs., and petitioners have not argued or attempted to show that they furnished the residences to improve the likelihood that the properties would appreciate in value. Rather, petitioners have argued, on brief, that the furnishings were necessary to rent the residences. Thus, any expenses that petitioners incurred with respect to the furnishings, including depreciation, are attributable to their renting of the Gulf and Bay Club condominium and the Waterside Way house. *171 [11] Petitioners' rental expenses, in the aggregate, exceeded their rental income from the Gulf and Bay Club condominium and the Waterside Way house. See supra pp. 7-8, 15-16. We therefore hold that petitioners, in holding the Gulf and Bay Club condominium and the Waterside Way house for their expected increase in value and occasionally renting them, engaged in two separate activities. Cf. sec. 1.183-1(d), Income Tax Regs.
b. Did Petitioners Hold or Rent the Properties for Profit?
Respondent further contends that petitioners neither held nor rented the Gulf *172 and Bay Club condominium and the Waterside Way house for profit. Respondent argues that annual appreciation on the Gulf and Bay Club condominium and the Waterside Way house would have had to exceed conservative estimates of the then-prevailing rate of return for waterfront property in the Sarasota area, 16.4 percent and 12.7 percent, respectively, for petitioners to profit from their expected increase in value and that it strains credibility to suppose that the petitioners would invest in Florida real estate, with all its trouble, expense, and risk, in the hopes of 10% annual appreciation, when a guaranteed yield of over 6% was available from United States Treasury bills.
Respondent also argues that the recreational use of the properties by petitioners' children and friends and petitioners' failure to profit from their "sale" of the Gulf and Bay Club condominium to their children also belie petitioners' profit motive. Respondent further argues that petitioners' sole purpose for renting the Gulf and Bay Club condominium and the Waterside Way house was to help pay taxes and other costs connected with their holding of the properties. Respondent therefore argues that section *173 183 precludes petitioners from deducting expenses, other than taxes and mortgage interest, attributable to their holding and renting of the Gulf and Bay Club condominium and Waterside Way house. The key requirement for deductibility under sections 162(a) and 212(1) and (2) is that the taxpayer be engaged in an activity with the genuine purpose of making a profit. Dreicer v. Commissioner, 78 T.C. 642, 644 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Allen v. Commissioner, 72 T.C. 28, 33 (1979). Whether a taxpayer engaged in an activity for profit is a question of fact. Burger v. Commissioner, 809 F.2d 355, 358 (7th Cir. 1987), affg. T.C. Memo. 1985-523; Lemmen v. Commissioner, 77 T.C. 1326, 1340 (1981). If the taxpayer engages in more than one activity, his profit objective for each activity is determined separately. Wagner v. Commissioner, T.C. Memo. 1983-606. The taxpayer engages in an activity for profit if "the facts and circumstances * * * indicate *174 that the taxpayer entered into the activity, or continued the activity, with the actual and honest objective of making a profit." Dreicer v. Commissioner, supra at 645; see also Surloff v. Commissioner, 81 T.C. 210, 233 (1983). While the taxpayer's profit objective must be bona fide, it need not be reasonable. Dreicer v. Commissioner, supra at 645; Allen v. Commissioner, supra at 33. "Profit", for purposes of sections 162 and 212, means financial gains, independent of tax savings. Landry v. Commissioner, 86 T.C. 1284, 1303 (1986). Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of factors to be considered when determining whether an activity is engaged in for profit: (1) The manner in which the taxpayers carry on the activity, (2) the expertise of the taxpayers or their advisors, (3) the time and effort expended by the taxpayers in carrying on the activity, (4) an expectation that the assets used may appreciate in value, (5) the success of the taxpayer in carrying on other similar or dissimilar *175 activities, (6) the taxpayer's history of income or losses with respect to the activity, (7) the amount of occasional profits earned, (8) the financial status of the taxpayer, and (9) the existence of elements of personal pleasure in carrying out the activity. Not every factor is relevant in each case, and no single factor or the number of factors indicating the presence or absence of a profit objective is controlling. Sec. 1.183-2(b), Income Tax Regs.; Borsody v. Commissioner, T.C. Memo. 1993-534; Scull v. Commissioner, T.C. Memo. 1983-33. Respondent is mistaken in arguing that petitioners did not expect to profit from the expected increases in value of the Gulf and Bay Club condominium and the Waterside Way house. Respondent incorrectly equates petitioners' profit motive with the likelihood that the properties would appreciate by 16.4 percent and 12.7 percent. [12] Even if the Gulf and Bay Club condominium and the Waterside Way house had to appreciate in value by these percentages for petitioners to profit from their investments, such appreciation was not inconceivable, given the then-prevailing rates of appreciation, *176 10 percent to 20 percent, for waterfront property in the Sarasota area. While the likelihood of petitioners' realizing these high rates of appreciation may have been low, this low likelihood of profit does not indicate that petitioners did not have an honest expectation that they would profit from their investments in the properties. *177 Respondent also is mistaken in arguing that petitioners could not have intended to profit from holding the Gulf and Bay Club condominium and the Waterside Way house because they chose to invest in real property even though a safer investment opportunity was available. Safe investments generally have less profit potential than more uncertain ones because profits, to some degree, reward the investor for bearing risks. While opportunities for greater profits require the investor to assume more risks than the investor willing to settle for lower profits, neither the desire to realize these higher profits nor the failure to receive them indicates that the investor did not intend to profit from his investment. The greater risks that petitioners assumed because they invested in Florida real estate were merely consistent with a desire for larger profits. It does not necessarily follow that petitioners lacked a profit motive. That petitioners' children and friends rented the Gulf and Bay Club condominium and the Waterside Way house for recreational purposes does not belie petitioners' profit motive in acquiring and holding the properties. The Gulf and Bay Club condominium and the Waterside *178 Way house are personal residences, and it is expected that persons staying in them would do so for their personal pleasure. Such personal pleasure generally does not extend to those who own the property, but do not use the property themselves, instead renting it to others. [13] *179 Petitioners' children and friends paid petitioners the fair market rental value for the properties and the fact that petitioners sometimes saw their children and friends socially during their stays in the residences does not impute to petitioners an element of personal pleasure that belies their profit motive in acquiring and holding the properties. [14]
Petitioners purchased and held the Gulf and Bay Club condominium and the Waterside Way house in a businesslike manner. Petitioners restricted their search for investment property to the neighborhoods in and around Sarasota, an area in which they resided and with whose housing market they were familiar. Petitioner, in addition to making his own investigation of the resale value of a Gulf and Bay Club condominium, spoke to a local real estate expert, other investors, and his accountant, all of whom owned investment real estate in the Sarasota area, before deciding to purchase the Gulf and Bay Club condominium and the *180 Waterside Way house. Petitioners also were cautious in how they cared for and used the Gulf and Bay Club condominium and the Waterside Way house. Petitioners hired a caretaker to maintain and make repairs to the Waterside Way house and grounds, and they contracted with the Gulf and Bay Club condominium association to maintain and make repairs to their condominium. In an effort to minimize damages and unnecessary wear and tear, petitioners did not rent the properties to the general public. [15]
On this record, petitioners had the necessary profit objective with respect to their holding of the Gulf and Bay Club condominium and the Waterside Way house for their expected increases in value. Inasmuch as *181 petitioners engaged in this activity for the production of income, they are entitled to deduct all expenses directly attributable to their holding of the Gulf and Bay Club condominium and the Waterside Way house. [16]
Notwithstanding the above, the record in this case also is replete with evidence that petitioners lacked a profit objective with respect to their rental of the Gulf and Bay Club condominium and the Waterside Way house. While, on the basis of the parties' agreed allocations between holding and rental expenses, petitioners had small profits from the rental of the Gulf and Bay Club condominium in the last 2 years at issue, they did not take a businesslike approach to their rental activities. Petitioners commingled their rental income with Mrs. Vandeyacht's *182 personal funds. The properties were never rented more than 12 weeks in any year, and petitioners made no effort to rent the properties for longer periods or to advertise their availability to the general public. Rather, petitioners, by their own admission, tried to minimize the rental use of the properties to reduce wear and tear. Although this policy of self-restraint might have contributed to the appreciation of the properties, we consider it to be dispositive evidence that petitioners did not have the necessary profit objective in renting these residences. We therefore disallow petitioners' excess deductions of expenses with respect to what we have found to be their separate rental activity. Issue 2. Section 6653(a) Additions
Respondent determined that petitioners are liable under section 6653(a) for additions to tax for negligence or intentional disregard of the rules and regulations for all years at issue. Respondent argues that petitioners were negligent inasmuch as their tax returns (1) erroneously allocated the entire purchase price of a 50-acre tract of land to the 14 acres sold by J-Mark in 1984, (2) erroneously claimed a $ 200,000 business expense deduction *183 in 1986 for a loan J-Mark made to Century Investment, (3) erroneously claimed a 1984 expense deduction for capital assets purchased by DSI Leasing, (4) failed to report interest income, on their 1984 and 1985 income tax returns, in the respective amounts of $ 1,435 and $ 4,589, (5) failed to report a 1985 constructive dividend of $ 4,332, (6) erroneously claimed, on their 1985 income tax return, a $ 10,000 capital contribution to Warehouse Partners as a deductible expense of J-Mark, (7) improperly deducted, on their 1986 income tax return, $ 22,447 for expenses relating to a Baltimore, Maryland, construction project that were properly deductible in 1987, and (8) erroneously claimed, on their 1985 income tax return, an $ 8,447 J-Mark business expense deduction for personal travel expenses. Respondent argues that "errors of such magnitude should have been noticed by anyone exercising due care in the preparation or review of the return." Petitioners contend that they are not liable for additions to tax for negligence or intentional disregard of the rules and regulations for the years at issue. Petitioners argue that their understatements of tax resulted from their good faith reliance *184 on advice they received from their accountants. Petitioners argue that it was reasonable for them to rely on their accountants' computations because petitioners had provided them with all relevant information necessary to prepare their income tax returns. Petitioners further argue that the understatements of tax were not obvious on the face of their income tax returns. Respondent's determination is presumptively correct, and petitioners have the burden of proving it erroneous. Rule 142(a). Section 6653(a)(1) provides for an addition to tax equal to 5 percent of the underpayment in tax if any part of such underpayment is due to negligence or intentional disregard of rules and regulations. Section 6653(a)(2) provides for an addition to tax equal to 50 percent of the interest payable under section 6601 on that portion of the underpayment in tax attributable to such negligence or intentional disregard. [17] We have defined negligence as a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do in a similar situation. Niedringhaus v. Commissioner, 99 T.C. 202, 221 (1992). We consider the taxpayer's experience and *185 knowledge in determining whether he was negligent or intentionally disregarded rules and regulations. DeRochemont v. Commissioner, T.C. Memo. 1991-600. Taxpayers bear the ultimate responsibility for the correctness of their income tax return. United States v. Boyle, 469 U.S. 241, 251-252 (1985). However, taxpayers are not required to duplicate the work done by their bookkeepers and accountants. See, e.g., id. at 251; Heasley v. Commissioner, 902 F.2d 380, 384 (5th Cir. 1990), revg. T.C. Memo. 1988-408. Rather, ordinary business care and prudence require taxpayers to take precautions to prevent inaccuracies in *186 their income tax returns and the books and records used to prepare them. Leroy Jewelry Co. v. Commissioner, 36 T.C. 443, 445-446 (1961). See generally sec. 1.6661-6(b), Income Tax Regs. (A taxpayer establishes reasonable cause if his business records indicate reasonable cause and good faith and he had reasonable procedures in place designed to identify factual errors.). In the case at hand, the parties presented credible evidence supporting their respective positions. However, for the reasons that follow, we are persuaded that petitioners acted reasonably. During the years at issue, petitioners took precautions to ensure the accuracy of their income tax returns. Petitioner, in addition to employing a bookkeeper to prepare and maintain his business records, hired DSM to prepare petitioners' income tax returns. DSM also was expected to and did identify unusual items in petitioners' records and ask petitioner or his bookkeeper about these items. Petitioner provided DSM with the necessary information to prepare petitioners' income tax returns, including receipts and disbursements spreadsheets of petitioner's various businesses. DSM, after reviewing *187 the spreadsheets and talking to petitioner's bookkeeper about the $ 200,000 check to Century Capital, concluded that the spreadsheet information was reliable. Although petitioners now concede that some mistakes were made in reporting information on the spreadsheets, these mistakes were not easily discernable on the spreadsheets or the income tax returns prepared by DSM. Petitioners accordingly had no cause to challenge the tax returns or the information used to prepare them. We therefore hold that petitioners exercised reasonable care and prudence and thus are not liable for additions to tax for negligence or intentional disregard of rules and regulations. Issue 3. Section 6661 Additions
Respondent also determined that petitioners are liable under section 6661 for additions to tax for substantial understatement of income tax for 1984 and 1986. Section 6661(a) provides for an addition to tax on an underpayment in tax attributable to a substantial understatement of income tax. An understatement of tax is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). An understatement of tax, for purposes *188 of section 6661, is the excess of the tax required to be shown on the return less the tax actually shown on the return, reduced by any rebates. Sec. 6661(b)(2)(A). The amount of the understatement also is reduced by the portion of the understatement for which (1) there is or was substantial authority for the taxpayer's treatment of the item, or (2) the relevant facts affecting the tax treatment of the item are adequately disclosed on the return. Sec. 6661(b)(2)(B). Section 6661(c) provides that where the taxpayer shows that there was reasonable cause for the understatement of tax and that he acted in good faith, the Secretary may waive all or part of the addition to tax under section 6661(a). The taxpayer establishes reasonable cause and good faith if he shows that (i) the understatement relates to factual errors inadvertently included in his business records, (ii) the records generally indicate reasonable cause and good faith, and (iii) he had reasonable controls and procedures designed to identify factual errors. Sec. 1.6661-6(b), Income Tax Regs.
We review the Secretary's denial of a waiver of section 6661 additions to tax for abuse of discretion. Mailman v. Commissioner, 91 T.C. 1079, 1083 (1988); *189 Donlon I Development Corp. v. Commissioner, T.C. Memo. 1993-374. Petitioners have the burden of proof on this issue. Rule 142(a). To meet this burden petitioners must show (i) that they requested waivers under section 6661(c), (ii) that respondent refused that request, Klieger v. Commissioner, T.C. Memo. 1992-734 and the cases cited therein, and (iii) that reasonable cause and good faith are so clear that respondent's refusal to waive the additions to tax was arbitrary, capricious, or without sound basis in fact, Cramer v. Commissioner, 101 T.C. 225 (1993); Mailman v. Commissioner, supra at 1084. Petitioners have not shown that they requested waivers under section 6661(c) and that respondent denied that request. Under the circumstances, we cannot assume that respondent exercised her administrative discretion under section 6661(c) and refused waivers. Petitioners therefore have not met their burden with respect to this issue. Cf. Klieger v. Commissioner, supra.
Even if petitioners had requested waivers properly, we *190 would hold that respondent did not abuse her discretion in refusing them. While we have held that petitioners established, by a preponderance of the evidence, that they were not negligent for the purpose of the additions to tax under section 6653(a), the evidence before us on that issue was not uncontroverted. We therefore cannot say that reasonable cause and good faith were so clear that respondent's refusal to waive the section 6661(a) additions to tax was without sound basis in fact. See Klavan v. Commissioner, T.C. Memo. 1993-299. Accordingly, if the Rule 155 computation reveals that petitioners substantially understated their 1984 and 1986 tax liabilities, respondent's determination of an addition to tax under section 6661(a) will be sustained. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Sec. 1503(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2742-2743, redesignated sec. 6653(a)(1) and (2) as sec. 6653(a)(1)(A) and (B)↩ for returns for which the due date without regard to extension is subsequent to Dec. 31, 1986.
2. 50 percent of the interest due on $ 144,416.↩
3. 50 percent of the interest due on $ 5,303.↩
4. 50 percent of the interest due on $ 66,313.↩
1. Unless otherwise noted, all section references are to the Internal Revenue Code as in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners reported, on their 1988 income tax return, a capital gain of $ 2,113 as a result of their sale of the Waterside Way house.↩
3. Although petitioner had a limited partnership interest in several of the Century Capital's limited partnerships, he did not have a management interest in Century Capital or these limited partnerships.↩
4. "Income", for purposes of sec. 212, is not limited to current income, but also includes income realized by the taxpayer in a prior year or income he may realize in subsequent years. Sec. 1.212-1(b), Income Tax Regs. Moreover, income "is not confined to recurring income but applies as well to gains from the disposition of property." Sec. 1.212-1(b), Income Tax Regs.; see also Ray v. Commissioner, T.C. Memo. 1989-628↩.
5. Under sec. 280A(c)(5), a taxpayer generally may not deduct losses incurred in connection with the rental of a house that he also used as residence. Sec. 280A(d) deems a taxpayer to use his house as a residence during the year if he or a family member, as defined by sec. 267(c)(4), uses the house for personal purposes for a number of days that exceeds the greater of 14 days or 10 percent of the days for which it was rented at fair market value. Because neither petitioner nor his family used the Gulf and Bay Club condominium or the Waterside Way house for more than 14 days in any year at issue, supra↩ p. 6, sec. 280A(c)(5) does not apply to the case at hand.
6. Sec. 1.183-1(d)(1), Income Tax Regs., provides, in part, that where the taxpayer is engaged in several undertakings, each of these may be a separate activity, or several undertakings may constitute one activity. In ascertaining the activity or activities of the taxpayer, all the facts and circumstances of the case must be taken into account. * * * If the taxpayer engages in two or more separate activities, deductions and income from each separate activity are not aggregated * * * in applying section 183↩
7. Respondent, on brief, concedes that the following expenses were attributable to petitioners' holding of the Gulf and Bay Club condominium and the Waterside Way house and not to their rental of the properties: Gulf and Bay Club Condominium
Expense
1984
1985
1986
Depreciation of building
$ 6,275
$ 12,551
$ 13,964
Mortgage interest
8,710
22,038
20,804
Insurance
-- 84
186
Loan amortization fee
707
1,413
-- 15,692
36,086
34,954
Waterside Way House
↩
Expense
1985
1986
Depreciation of building
$ 6,380
$ 10,247
Mortgage interest
10,611
16,458
Taxes
69
-- Insurance
198
212
Loan amortization fee
68
1,530
17,326
28,447
8. Petitioners have not argued that respondent erroneously computed the amounts of depreciation attributable to the residences and their furnishings, only that respondent erred in differentiating between the depreciation of the residences and depreciation of the furnishings for the purpose of separating petitioners' undertakings into two activities.↩
9. We note that the Secretary has not taken a uniform approach under the passive activity rules. Rather, sec. 1.469-1T(e)(3)(vi)(B), Temporary Income Tax Regs., 53 Fed. Reg. 5703↩ (Feb. 25, 1988), provides that if the principal purpose for holding real property is to realize gain from its expected appreciation in value, renting such property will be treated as incidental to the holding activity if gross rental income is less than 2 percent of the lesser of the property's unadjusted basis or fair market value.
10. Under sec. 1.183-1(d), Income Tax Regs.↩, deductions directly attributable to the holding of property include, but are not limited to, interest on a mortgage secured by the property, taxes attributable to the property and improvements, and depreciation of improvements to the property.
11. Contrary to petitioners' argument, their case is distinguishable from Mayes v. United States, 60 AFTR 2d 87-5046, 87-2 USTC par. 9478 (W.D. Mo. 1986). In Mayes↩, the taxpayers' expenses did not include depreciation of furnishings because the house was rented unfurnished. Accordingly, there was no need to allocate depreciation between movables, such as furnishings, and improvements to the land.
12. Respondent's argument that the properties needed to appreciate by 16.4 percent and 12.7 percent, respectively, for petitioners to profit from their appreciation in value is based on the belief that the increase in value must exceed all expenses, including depreciation. However, "profit", for purposes of sec. 212, is financial gain, independent of tax savings. Landry v. Commissioner, 86 T.C. 1284, 1303 (1986). Thus, while losses due to depreciation are considered in determining profit or loss for tax purposes in any year, Smith v. Commissioner, T.C. Memo. 1993-140, the taxpayer "profits", in the financial sense, from the overall investment if he or she disposes of the property for more than his original cost plus additional out-of-pocket expenditures. Kahle v. Commissioner, T.C. Memo. 1991-203 ("If respondent is arguing that petitioners must recover both their depreciation deductions and↩ their capital investment to make a profit, we specifically reject that argument because both depreciation and capital investment address the same outlay.").
13. Sec. 280A provides for an exception to this general rule. Where the taxpayer rents a house to a family member, as defined by sec. 267(c)(4), for use as something other than a principal residence, the family member's personal use will be imputed to the taxpayer, and the taxpayer will be deemed to have used the house as a personal residence during any year in which family members used the house for personal purposes for a number of days that exceeds the greater of 14 days or 10 percent of the days for which it was rented at fair market value. Sec. 280A(d). However, we repeat that sec. 280A does not apply to this case because petitioners did not rent either property to members of their family for more than 14 days in any single year. See supra↩ pp. 6, 13.
14. Contrary to respondent's argument, petitioners' case is distinguishable from Kanter v. United States, 31 AFTR 2d 73-973, 73-1 USTC par. 9311 (E.D. Va. 1973), affd. without opinion 489 F.2d 754 (4th Cir. 1974). In Kanter↩, the taxpayers occupied their oceanfront cottage during the resort season and the personal pleasure ascribed to them arose from their own use of the property, not that of a third party.
15. While it might be argued that the residences would have appreciated more if petitioners had tried to maximize their rental revenues, we do not think it appropriate to second guess petitioners' decision to restrict rentals in assessing their profit motive in holding the properties for their expected appreciation.↩
16. Petitioners have not disputed respondent's allocations of expenses between their rental activities and holding for appreciation activities, except as to the depreciation of furnishings. We therefore accept those allocations in deciding this case.↩
17. In sec. 1503(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2742-2743, Congress redesignated sec. 6653(a)(1) and (2) as sec. 6653(a)(1)(A) and (B)↩ for returns for which the due date without regard to extension is after Dec. 31, 1986.